**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

ROBIN FARRIS,

        Applicant,

v.

MARK A. BROADDUS, Warden, and
JOHN W. SUTHERS, Attorney General of the State of Colorado,

        Respondents.

---

**APPLICANT'S WRIT OF HABEAS CORPUS PETITION AND MEMORANDUM
OF LAW PURSUANT TO 28 U.S.C. SECTION 2254**

---

COMES NOW, the above named Applicant, ROBIN FARRIS, hereinafter referred to as "Applicant," by and through her undersigned counsel, and files her Writ of Habeas Corpus Petition and Memorandum of Law Pursuant to 28 U.S.C. Section 2254.

## I.  JURISDICTION

Robin Farris, Prisoner No. 64680, is a state prisoner, confined in the Denver Women's Correctional Facility, 3600 Havana, P.O. Box 392005, Denver, Colorado 80239-8005, was sentenced on February 8, 1991 to a term of life for the offense of First Degree Felony Murder by the Honorable Thomas C. Levi, District Court of Arapahoe County, Colorado (Case No. 90CR222).  The Applicant contends that her conviction and sentence were imposed in violation of the Due Process Clause of the Fifth and Fourteenth Amendments, the effective assistance of counsel guarantee of the Sixth Amendment, and the right to effective cross-examination pursuant to the Sixth Amendment to the United States

Constitution.  Jurisdiction is conferred upon this Court to entertain these claims under Section 2254 of Title 28 of the United States Code.

## II.  STATEMENT OF THE CASE AND PROCEDURAL BACKGROUND

1.  On January 23, 1991, a jury trial found the Applicant guilty of the following offenses: First Degree Felony Murder, Second Degree Murder, First Degree Burglary, and Second Degree Burglary.

2.  On February 8, 1991, the Court found that the three lesser counts merged into the First Degree Felony Murder sentence and sentenced the Applicant to a term of Life.

3.  During trial and sentencing the Applicant was represented by Addison Adams, Esq., 7325 S. Potomac, Centennial, Colorado 80112-4053, (303) 649-6388 and Daniel Bowen, Esq., 4710 E. Bromley Lane, Brighton, Colorado 80601-7800, (303) 659-4274.

4.  The Applicant, through counsel, filed a direct appeal with the Colorado Court of Appeals and the Court affirmed her conviction and sentence on November 27, 1992 in an unpublished opinion (91CA0396)(See Exhibit #1).  The Applicant raised the following issues:   (1)  Did the court improperly deny the Defendant's Suppression Motion concerning statements she made to the police, after she made unambiguous requests about her desire to have a lawyer?  (2)  Did the court allow improper hearsay testimony to be presented which was irrelevant and prejudicial concerning prior statements of the accused under the improper theory that the state of mind of the accused is relevant, and did the court improperly admit evidence of prior bad acts by the accused and third, persons under the same theory without proper limiting instruction?  (3)  Was the defense improperly limited in cross examining witnesses and presenting evidence about its theory of the case?  (4)  Did the prosecution improperly attempt to impeach a defense witness

with a subsequent bad act?  (5)  Did the court improperly allow the Jury to consider the offense of felony murder and burglary, when there was absolutely no evidence of these offenses?  (6)  Did the prosecution engage in improper conduct by asking a witness to testify about the Defendant's right to remain silent, submitting an advisement form into evidence with the words, first degree murder thereon, and by telling the Jury that the reason they were given certain instructions by the court was that the evidence proved the Defendant was guilty of these offenses?  (7)  Did the court improperly instruct the Jury prior to evidence being presented that this was not a capital case?   (8)   Does the combined effect of all errors herein, warrant a new trial?

5.  During the direct appeal, the Applicant was represented by Cecil L. Turner, Esq., 201 West 8th, Suite 801, Pueblo, Colorado 81003-3037, (719) 545-1444.

6.  Counsel failed to file a Petition for Rehearing before the Colorado Court of Appeals and never filed a Petition for Writ of Certiorari with the Colorado Supreme Court.

7.  On November 8, 1995, the Applicant filed a *pro se* Colorado Crim.P.35(c) motion for post-conviction relief.   In that motion, the Applicant raised the claim that her state appellate attorney was ineffective and that she was denied her right to effective assistance of counsel pursuant to the Sixth Amendment to the United States Constitution.

8.  Without a decision being issued by the district court, the Applicant filed another *pro se* Colorado Crim.P.35(c) motion on June 12, 1996.   In this new motion, which references her first motion, the Applicant addressed the legality and constitutionality of her conviction including issues of whether the Applicant was properly convicted of burglary, whether there was sufficient evidence to convict the Applicant of first degree felony murder, whether the Applicant was prejudiced by the district court's failure to

instruct the jury as to the offense of manslaughter, whether the "rule of lenity prohibits the entry of dual convictions and sentences for felony murder and murder after deliberation when sentences are predicated upon the killing of a single victim," whether the "privilege against self-incrimination forbids both comment by prosecution on accused silence," and whether the Applicant received ineffective assistance of trial and appellate counsel in violation of her Sixth Amendment rights to the United States Constitution.  In her motion, the Applicant referenced her direct appeal and the appellate decisions.

9.   The trial court did not rule on either of the Applicant's two *pro se* Colorado Crim.P.35(c) motions and these motions remained pending before the district court for 10 years.

10. On November 24, 2004, the Applicant through counsel filed a Crim.P.35(c) motion alleging the following issues:   (1) The Applicant received ineffective assistance of appellate counsel;  (2) The Curtis advisement pursuant to People v. Curtis, 681 P.2d 504 (Colo. 1984) was inadequate;   (3) The cumulative effect of the issues deprived the Defendant of a fair trial and meaningful appeal; (4) The Applicant is entitled to an evidentiary hearing.  In addition, defense counsel incorporated the two previously filed *pro se* Colorado Crim.P.35(c) motions in his motion.

11. The Applicant was represented by Randy C. Canney, Esq., 1733 High Street, Denver, Colorado 80218, (303) 888-5014, during her November 24, 2004 Crim.P.35(c) motion and its subsequent appeal to the Colorado Court of Appeals as well as during the Writ of Certiorari review to the Colorado Supreme Court.

12. On February 16, 2005, the state district court denied the Applicant's motion without holding a hearing.  The court stated the following:

4

…This matter comes on pursuant to Defendant's Motion for PostconvictionRelief Pursuant to Crim.P.35(c). Defendant alleges that trial and post conviction counsel provided her with ineffective representation.

Defendant was convicted by a jury on January 23, 1991, of First Degree Felony Murder, Second Degree Murder, First Degree Burglary and Second Degree Burglary. The Court found that the lesser counts merged into the First Degree Felony Murder sentence. Defendant was sentenced to life in prison on February 8, 1991.

The Court has reviewed the file, Defendant's two earlier motions for post-conviction relief, all pleadings filed and unpublished opinion of Defendant's Court of Appeals action.

A motion for postconviction relief pursuant to Crim.P.35(c) may be denied without an evidentiary hearing only where the motion, files, and record in the case clearly establish that the allegations presented in the defendant's motion are without merit and do not warrant postconviction relief. Crim.P.35(c). Unlike the high standard for a new trial based on newly discovered evidence, a defendant, however, need not show that counsel's deficient conduct more likely than not altered the outcome of the case. Strickland, 466 U.S. at 693-94, 104 S.Ct. 2052.

Because relief from ineffective assistance of counsel requires a criminal defendant to prove both deficient representation and prejudice, denial of the motion without a hearing is justified if, but only if, the existing record establishes that the defendant's allegations, even if proven true, would fail to establish one or the other prong of the Strickland test. Ardoling v. People, 69 P.3d 73 (Colo. 2003). After review of the existing record, this Court finds as follows:

The allegations made in Defendant's third motion for postconviction relief are not supported by the record. While one attorney may have neglected the matter, later counsel did file the appropriate appeal. The Court of Appeals did understand the facts of the underlying case. Defendant has not established that she has been prejudiced by the "alleged" deficient representation. Defendant's motion for postconviction relief is DENIED.

13. The Applicant, through counsel, filed a direct appeal with the Colorado Court of Appeals addressing her multiple Rule 35(c) motions and the Court affirmed her conviction and sentence on February 1, 2007 in an unpublished opinion (05CA0660)(See Exhibit #2). In her appeal, the Applicant raises the claims in all of her post-conviction motions. The Applicant raised the following issue: The trial court erred in denying Defendant's post-conviction motion without a hearing, given that Defendant raised meritorious claims of ineffective assistance of counsel and an adequate Curtis advisement and inquiry.

14. In its decision, the Colorado Court of Appeals addressed with specificity the Applicant's claims of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, sufficiency of evidence, failure of counsel to further appeal her case to the Colorado Supreme Court, failure of counsel to argue that the trial court erred in admitting the victim's past statements, failure of appellate counsel to argue that the trial court erred both in instructing the jury on the elements of burglary and in providing an inadequate limiting instruction to the jury, the failure of the trial court in advising the Applicant her right not to testify, and that the cumulative errors by trial and appellate counsel, in addition to a defective Curtis advisement rendered her trial unfair. (See Attachment #2).

15. The Applicant, through counsel, filed a Petition for Writ of Certiorari with the Colorado Supreme Court. In her petition, the Applicant raised the following issues: (1) Whether the holding of Cooper v. People, 973 P.2d 1234 (Colo. 1999) mandates that Defendant's convictions for First and Second Degree Burglary (and thus the conviction for Felony Murder) cannot stand where the evidence is insufficient to establish that Ms.

6

Farris had the requisite mental intent at the time she became a trespasser and where the jury instructions on the issue were inadequate;  (2)  Whether the trial court's addition of language to a limiting instruction allowing the jury to draw inferences as they deemed appropriate from the limited evidence violated the principles of C.R.E. 404(b) and the holdings of People v. Spoto, 795 P.2d 1314 (Colo. 1990) and People v. Garner, 806 P.2d 366 (Colo. 1991); and (3)  Whether the Defendant was entitled to a hearing on her post-conviction motion pursuant to the standards of Ardolino v. People, 69 P.3d 73 (Colo. 2003).

16. On May 14, 2007, the Colorado Supreme Court denied the Applicant's Petition for Writ of Certiorari.  (Case No. 07SC194).  (See Exhibit #3).

17. Applicant now challenges her conviction and sentence in her current habeas corpus proceeding filed pursuant to Title 28 U.S.C. § 2254.

18. No other petition or motion has been filed in this Court attacking the Applicant's conviction or sentence following Applicant's exhaustion of her state remedies.

### III.  STATUE OF LIMITATIONS

This petition is timely filed under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The AEDPA established a one-year limitation period for habeas corpus petitions.  28 U.S.C. § 2244(d).  This period begins to run when the judgment becomes final.

(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from…

(a) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review…

Id.

The period is tolled by any properly filed postconviction proceedings:

The time during which a properly filed application for state postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under the subsection. 28 U.S.C. § 2244(d)(2).

The AEDPA provisions became effective on April 24, 1996.  The Applicant's direct appeal had already been concluded on November 27, 1992, prior to the passage of the AEDPA.  Thereafter, the Applicant had her *pro se* Colorado Crim.P. 35(c) motions pending before the passage of the AEDPA.  No final ruling occurred until the Colorado Supreme Court denied the Applicant's Petition for Writ of Certiorari with the Colorado Supreme Court on May 14, 2007.

Where a conviction became final before AEDPA took effect, as is the case here, the one year limitation period for federal habeas petitions starts on AEDPA's effective date, April 24, 1996.  Preston v. Gibson, 234 F.3d 1118, 1120 (10th Cir. 2000); Hoggro v. Boone, 150 F.3d 1223, 1225-26 (10th Cir. 1996).  The time deadline may be tolled during which time that the Applicant is seeking review of a state post-conviction motion in the highest state court.  Here, the time deadline is tolled since the Applicant had several pending state postconviction motions prior to the passage of the AEDPA and it was not concluded until May

14, 2007.  Therefore, the deadline for filing Applicant's § 2254 petition became final on May 14, 2008.  Applicant's petition is timely filed.

Finally, the petition is timely under the provisions of equitable tolling. Equitable tolling is an extraordinary remedy employed in this Circuit in "rare and exceptional circumstances."  Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000).  This Circuit has held that it is "only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control."  Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000).  Here, the Applicant actively pursued her postconviction state motions prior to the passage of AEDPA and final resolution did not occur until 11 years later on May 14, 2007.  Applicant's petition remains timely.

## IV.  ISSUES PRESENTED FOR REVIEW

1. The Applicant was denied her right to a fair trial and due process of law pursuant to the Fifth and Fourteenth Amendments due to the improper ruling of the state court in denying Applicant's suppression motion.

2. The Applicant was denied her right to a fair trial and due process of law pursuant to the Fifth and Fourteenth Amendments due to the court allowing the improper introduction of hearsay testimony.

3. The Applicant was denied her right to a fair trial pursuant to the Sixth Amendment as a result of the court denying the Applicant's right to full and effective cross-examination.

4. The Applicant was denied her right to a fair trial and due process of law pursuant to the Fifth and Fourteenth Amendments as a result of the improper conduct of the prosecution by asking a witness to testify about the Applicant's right to remain silent.

5. The Applicant was denied her right to a fair trial and due process of law pursuant to the Fifth and Fourteenth Amendments due to the lack of sufficiency of evidence relating to the state offense of felony murder and burglary.

6. The Applicant was denied her right to a fair trial and due process of law pursuant to the Fifth, Sixth and Fourteenth Amendments due to the state court's failure to provide for an evidentiary hearing during Applicant's Rule 35(c) proceedings based on claims of ineffective assistance of counsel, sufficiency of evidence, introduction of hearsay statements, right of the Applicant to remain silent, as well as cumulative errors.

## V.  STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a state prisoner is entitled to relief in a Section 2254 proceeding only if she is held "in custody in violation of the Constitution or laws or treaties of the United States."  To the extent that a petitioner challenges an alleged error under state law, she alleges no deprivation of federal rights and may not obtain habeas relief.  Engle v. Isaac, 456 U.S. 107, 119 (1982).

When a constitutional claim was adjudicated on the merits in the state courts, habeas relief may not be granted unless the state court decision was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the

Supreme Court," or was "based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. Section 2254(d)(1) and (2).

"The AEDPA amended the standards for reviewing state court judgments in Section 2254 proceedings…The AEDPA increases the deference to be paid by the federal courts of the state court's factual findings and legal determinations."  Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997).

The Supreme Court explained these standards in Williams v. Taylor, 529 U.S. 362 (2000).  Under the "contrary to" clause of section 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent only when it "arrives at a conclusion opposite to that reached by this Court on a question of law." (i.e., "applies a rule that contradicts the governing law set forth in our cases"), or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."  Id. at 405-406.

Under the "unreasonable application" clause of Section 2254(d)(1), a state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal principle from this Court's decision but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 409-413. The question is not whether the state court decision was "incorrect," but whether it was "objectively unreasonably."  Id.

Title 28 U.S.C. § 2254(e)(1) maintains the prior rule that state court actual determinations must be presumed correct in habeas proceedings.  See generally, Sumner v. Mata, 455 U.S. 591, 597 (1982).  This presumption of correctness may not be overcome because a federal court might have decided the issue of historical fact

differently than the state court. Rather, it requires federal courts "to face up to any disagreement as to the facts and to defer to the state court…" <u>Sumner</u>, 455 U.S. at 597-598. The Applicant must "rebut the presumption of correctness by showing, by clear and convincing evidence, that the state court's decision was an unreasonable determination of the facts." <u>Fields v. Gibson</u>, 277 F.3d 1203, 1215-1216 (10th Cir. 2002); <u>Le v. Mullin</u>, 311 F.3d 1002, 1010 (10th Cir. 2002).

The presumption of correctness applies equally to state trial and appellate court findings of fact. <u>Sumner</u>, 455 U.S. at 591. That is because state courts are "in far better position than the federal courts" to make findings of fact. <u>Rushen v. Spain</u>, 464 U.S. 114, 120 (1983).

The high standard of factual deference is increased by the additional AEDPA-imposed burden that, when attempting to overcome the presumption of correctness, the petitioner "shall have the burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. Section 2254(e)(1); <u>Houchin</u> 107 F. 3d at 1470.

In each of the issues presented, the Applicant asserts that the state court decision was contrary to or involved an unreasonable application of clearly established federal law or was unreasonable in light of the evidence presented. 28 U.S.C. § 2254. No findings of fact were made relating to claims of ineffective assistance of counsel due to the state district court's failure to conduct a post-conviction evidentiary. <u>Rushen v. Spain</u>, 464 U.S. 114 (1983). Clear and convincing evidence has been outlined in each issue and in the Applicant's previous pleadings and thus any perceived procedural burden as set forth by the Respondent has been overcome. Moreover, the state court's decisions were based on an unreasonable determination of the facts.

## VI.  ISSUES PRESENTED HAVE BEEN EXHAUSTED IN STATE COURT AND THE ISSUES ARE NEITHER PROCEDURALLY BARRED NOR PRECLUDED FROM FEDERAL HABEAS REVIEW.

In order to exhaust a claim in state court to preserve it for review in federal habeas corpus proceedings, a petitioner must have presented her claim to the highest state court with jurisdiction to hear it.  O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999); Denver v. Kansas State Penitentiary, 36 F.3d 1531, 1534 (10th Cir. 1994).  The Applicants' claims are exhausted, since she presented these claims on appeal from her conviction and thus have become the law of the case.  In addition, the claims involved in her Rule 35(c) proceedings were presented on direct appeal and in her separately filed writ of certiorari to the Colorado Supreme Court.

Moreover, the Applicant has exhausted each of the issues presented consistent with Duncan v. Henry, 513 U.S. 364 (1995).  Although each issue raised in Applicant's petition is stated slightly different than Applicant's state direct appeal or writ of certiorari to the Colorado Supreme Court, the substance of the arguments remains similar and are "virtually identical."  By requiring this Applicant to have addressed her current issues in the exact language and substance of her state claims would deny her due process rights and result in a "fundamental miscarriage of justice."  McClesky v. Zant, 499 U.S. 467, 493 (1991).  It would be unnecessarily burdensome for state courts to use exact federal statutes or references to U.S. Constitutional Amendments.

Outlined below are the comparable state appellate issues raised before the Colorado Supreme Court.  Parenthetically, as long as the issue is properly preserved in the context of appellate review, the issue remains ripe for federal review.  Here, all of Applicants'

issues have been properly exhausted in the state court system and are therefore available

for federal habeas review.

**1.   The Applicant was denied her right to a fair trial and due process of law pursuant to the Fifth and Fourteenth Amendments due to the improper ruling of the state court in denying Applicant's suppression motion.**

Comparable direct state appellate issue presented in Applicant's Colorado Crim.P.35(c)

motions:   Did the court improperly deny the Defendant's Motion to Suppress her

statements made to police.

**2.   The Applicant was denied her right to a fair trial and due process of law pursuant to the Fifth and Fourteenth Amendments due to the court allowing the improper introduction of hearsay testimony.**

Comparable direct state appellate issue presented in Applicant's Colorado Crim.P.35(c)

motions:   Did the court allow improper hearsay testimony to be presented which was

irrelevant and prejudicial concerning prior statements of the accused under the improper

theory that the state of mind of the accused is relevant, and did the court improperly

admit evidence of prior bad acts by the accused and third, persons under the same theory

without proper limiting instruction?

**3.   The Applicant was denied her right to a fair trial pursuant to the Sixth Amendment as a result of the court denying the Applicant's right to full and effective cross-examination.**

Comparable direct state appellate issue presented in Applicant's Colorado Crim.P.35(c)

motions:   Was the defense improperly limited in cross examining witnesses and

presenting evidence about its theory of the case?

**4.   The Applicant was denied her right to a fair trial and due process of law pursuant to the Fifth and Fourteenth Amendments as a result of the improper conduct of the prosecution by asking a witness to testify about the Applicant's right to remain silent.**

<u>Comparable direct state appellate issue presented in Applicant's Colorado Crim.P.35(c)</u>

<u>motions</u>:  Did the prosecution engage in improper conduct by asking a witness to testify

about the Defendant's right to remain silent…

**5.   The Applicant was denied her right to a fair trial and due process of law pursuant to the Fifth and Fourteenth Amendments due to the lack of sufficiency of evidence relating to the state offense of felony murder and burglary.**

<u>Comparable direct state appellate issue presented in Applicant's Colorado Crim.P.35(c)</u>

<u>motions</u>:   Did the court improperly allow the Jury to consider the offense of felony

murder and burglary, when there was absolutely no evidence of these offenses?

**6.   The Applicant was denied her right to a fair trial and due process of law pursuant to the Fifth, Sixth and Fourteenth Amendments due to the state court's failure to provide for an evidentiary hearing during Applicant's Rule 35(c) proceedings based on claims of ineffective assistance of counsel, sufficiency of evidence, introduction of hearsay statements, right of the Applicant to remain silent, as well as cumulative errors.**

<u>Comparable direct state appellate issue presented in Applicant's Colorado Crim.P.35(c)</u>

<u>motions</u>:   (1) Whether the holding of <u>Cooper v. People,</u> 973 P.2d 1234 (Colo. 1999)

mandates that Defendant's convictions for First and Second Degree Burglary (and thus

the conviction for Felony Murder) cannot stand where the evidence is insufficient to

establish that Ms. Farris had the requisite mental intent at the time she became a

trespasser and where the jury instructions on the issue were inadequate;  (2) Whether the

trial court's addition of language to a limiting instruction allowing the jury to draw

inferences as they deemed appropriate from the limited evidence violated the principles

of C.R.E. 404(b) and the holdings of <u>People v. Spoto,</u> 795 P.2d 1314 (Colo. 1990) and

<u>People v. Garner,</u> 806 P.2d 366 (Colo. 1991); and (3)   Whether the Defendant was

entitled to a hearing on her post-conviction motion pursuant to the standards of <u>Ardolino</u>

<u>v. People,</u> 69 P.3d 73 (Colo. 2003).

## VII.  SUMMARY OF FACTS SUPPORTING THE CLAIMS FOR RELIEF

The following summary of facts is drawn from the Applicant's direct state appellate brief:

"On February 20, 1990, the Police Department for the City of Aurora, Colorado, received a call concerning a shooting which allegedly occurred at 909 South Peoria, a place known as the Mandarin Apartments.  When the police arrived at this location, they discovered the body of the victim herein, lying just inside the door of the apartment, 221 North.

One of the first witnesses contacted by the police was Travis Perry, who was a security guard at the Mandarin Apartments.  Mr. Perry testified that, he was on duty in the early morning hours of February 20, 1990, patrolling the hallways of the apartment house, when he encountered another guard by the name of Slack at the other end of the hall.

When he greeted Mr. Slack, he was told to be quiet as there was apparently something happening in apartment 221.  As Mr. Perry got closer to this apartment, the tenant opened the door, stepped into the hallway and asked the security guards to stay in the area as she may have difficulty with someone in her apartment.  They offered to call the police or other appropriate authorities, but the tenant, Bea King, said that wouldn't be necessary and then reentered the apartment and shut the door.  (Transcript Volume II, pp. 73).

Guard Perry waited outside the apartment for several minutes, didn't hear any argument and was about to leave the area when the door opened and Bea King re-appeared.  She did not appear upset or emotional but simply wanted the guard to persuade the other party in the apartment to leave.  (Transcript Volume II, pp. 75).

The guard approached the open door of the apartment where he observed the Defendant sitting inside. He asked her to leave and she refused, saying she still had things to discuss with Bea King. The impression the officer had at the time from viewing the demeanor of the parties, was that Bea King was angry, the Defendant was passive and that if trouble occurred, it would be from Bea King. (Transcript Volume II, pp. 103).

He then informed the parties that he would call the police and was told by the Defendant to do so. There was no evidence of forced entry into the apartment.

When Security Guard Perry was in the process of calling the police, he was told by the other guard that shots were heard coming from the area of the victim's apartment.

Two people who were in the apartment across from the shooting, were also called as witnesses at trial and testified to their observations, these people being Kimberly Blevins, and Hershell Prather. They testified earlier in the evening of February 19, 1990, they first observed and heard the Defendant come to the victim's apartment and knock on the door. When the door was opened by the victim, the Defendant went on in, saying she needed to talk. Both witnesses indicated that they knew Robin Farris as a friend of Bea Kings and had observed her at Bea's apartment on prior occasions.

Shortly after her first visit, Kimberly Blevins heard Robin Farris leave, heard the victim say "thanks" in a friendly voice, and then heard the Defendant respond with the words, "slut", and "whore", as she was leaving. The witnesses then went to bed.

Mr. Prather testified that at about 2:00 a.m. on February 20, 1990, he was awakened by a knock on the door, when he looked outside, he saw both the Defendant and victim in the hallway outside his door. He decided to go to the bathroom and in a matter of seconds heard two shots. (Transcript Volume III, pp.413).

The Defendant was subsequently arrested, taken to the police station, where she was held in a small holding cell. After a lengthy period, she was then taken about 5:50 a.m. to a debriefing room to be questioned and interviewed by a detective named Daniel E. Dailey.

After the detective started the advisement of the Defendant, she asked him when she would be provided with a lawyer and when would she get to see a judge. The officer basically tells here that she will get a lawyer several hours later that day, after she is advised of her rights in court. She asks these questions after she is advised of her rights but before signing the form. (Transcript Volume II, pp. 43, Suppression Hearing).

The officer did not re-advise the Defendant, but told her that he was unsure just when she could get a lawyer, but that she could wait until after that before talking to him.

The officer did not tell the Defendant that she could have the public defendant, did not offer to let her call a public defender, and did not indicate to the Defendant that she could have a lawyer present while being questioned.

The Defendant then asked the officer what to do if she did not understand questions or if she did not want to answer certain questions. The Defendant then made a complete statement about her involvement in this incident.

The Defendant's Motion to Suppress this statement was denied and the substance of the statement was admitted into evidence at trial. (See Suppression Motions, pp. 1-62, Volume II Transcript).

The prosecution then presented the testimony of several people at trial, who knew the victim in this case. Their testimony included several hearsay statements of the victim,

which tended to show that the accused had engaged in prior bad acts directed at the victim, or that the victim was afraid of the accused.

The first of these witnesses, Katrina Mason, testified that the victim told her she was going out with the Defendant just to keep the peace, that she was living every day as her last because she was not happy with her relationship with the Defendant, and that she wanted out of the relationship she was having with Robin Farris, the Defendant. (Transcript Volume II, pp. 201-203, 207).

Another witness, Ernestine Matthews, testifies that the victim on one occasion came to her apartment, told her she had just jumped out of a moving vehicle, being driven by someone she was afraid of, and appeared frantic and frightened.  She implies it is the Defendant the victim was talking about, but admits that no one's name was ever used by the victim.  (Transcript Volume III, pp. 311-337).

Then a witness by the name of John Hill, testifies about his relationship with the victim.  He says she told him that the Defendant was arguing with her due to her relationship with Mr. Hill.  He further testified that the victim told him she was going to stay at a friend's apartment on one occasion to get away from the Defendant.  He also testified that he was worried about the victim and wanted her to stay at his apartment the evening she was shot.  {Transcript Volume III, pp. 369-390).

The Court allows these hearsay statements of the accused and evidence implying prior bad acts of the Defendant to go to the Jury to show the state of mind of the victim.  This was the only purpose for which this evidence was offered.  (Transcript Volume II, pp. 239-241, for example and Volume II, pp. 308, 315).  This court does even though at one point he says that the state of mind of the victim is not relevant..  (Transcript Volume

III, pp. 252-253).  It should further be pointed out that no proper cautionary instruction was given, concerning any purpose other than state of mind and then only rarely.

The defense was, obviously, presenting as a theory of the case, self defense.  They reasoned that the Defendant and the victim were lovers, and that the Defendant wanted to end the relationship she had with the victim due to the victim's activities of prostitution and drug use.  The defense on several instances, attempted to present through either direct evidence or cross examination, proof of these matters to show how this affected the Defendant's state of mind.  They were not allowed to do so.  (Transcript Volume II, pp. 252, 253).

A police officer by the name of Konkoly, was called to testify about his observations of and arrest of the Defendant.  The defense was trying to show that the Defendant was cooperative at the time of her arrest.  The prosecution on re-direct asks the witness essentially if she, the Defendant, was cooperative with you, did she tell you she was attacked by the victim.  This was clearly a comment on the Defendant's right to remain silent.  (Transcript Volume 3, pp. 486).

In addition, the advisement form which was used when the Defendant subsequently was advised, contained the words, first degree murder, which strongly implied that this is what the police thought it was.  (Transcript Volume IV, pp. 651).

The prosecutor in his closing argument, then tells the Jury that the instructions on first degree murder and felony murder were given by the court because the evidence establishes that these offenses occurred.  This is obviously an improper comment which implies that courts opinion on the guilt of the accused.  (Transcript Volume V, pp. 1034-1035).

When the defense called a witness, Mr. Keith Sales, to testify on behalf of the Defendant, he is cross examined on a subsequent bad act without any cautionary instruction. (Transcript Volume V, pp. 788).

Prior to beginning the testimony in this matter, the court instructed the Jury that this is not a capital case. (Transcript Volume II, pp. 12).

After all the evidence was in, the court allowed the case to be submitted to the Jury on burglary and felony murder based on burglary, even though there was absolutely no evidence to establish these charges."

Additional facts as needed are outlined in the arguments presented below.

## VIII. ARGUMENTS OF FACT AND LAW

**1.   The Applicant was denied her right to a fair trial and due process of law pursuant to the Fifth and Fourteenth Amendments due to the improper ruling of the state court in denying Applicant's suppression motion.**

The Applicant was arrested on February 20, 1990 and taken to the Aurora Police Department where she was subsequently placed in an interview room.  Following being advised of her Miranda rights, the Applicant asked, "when will I go before a judge and when will I get a lawyer, and if I get a lawyer, and if I asked her a question and she didn't want to answer that question, if there was a problem with her not answering that question after having answered other questions."  [Transcript Volume I, Suppression Hearing, page 44].  Continued questioning occurred in spite of this exchange between the Applicant and the police.  Applicant then signed a written waiver of her rights and continued to answer the questions posed to her during the course of the interview.  Prior to trial, counsel filed a motion to suppress the Applicant's statements made to the investigator on the day of her arrest.

The Colorado Court of Appeals determined that the questions presented by the Applicant did "not constitute a clear and unambiguous request for counsel." People v. Hulsing, 825 P.2d 1027 (Colo. App. 1991). The Colorado Court eventually concluded "that the investigator's actions complied with the requirements laid down in People v. Benjamin, 732 P.2d 1167 (Colo. 1987)." Ultimately, the Court believed that the Applicant's request was not equivalent with a request for counsel thereby triggering the requirement that the police cease and desist its questioning. The Court further found that the investigator warned the Applicant that she could elect to remain silent and obtain an attorney and then he continued his questioning.

**-The State Courts' decisions are contrary to and involve an unreasonable application of federal law or the decision reached was based on an unreasonable application of clearly established law as determined by the Supreme Court. Williams v. Taylor, 529 U.S. 362, 404-05 (2000). In addition, the decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).**

In this instance, the Colorado Appellate Court's rational conflicts with the basic requirements of Miranda v. Arizona, 384 U.S. 436 (1966) and Edwards v. Arizona, 451 U.S. 477 (1981). The statements made by the Applicant indicate her desire to speak with a lawyer. Under the Miranda rule, law enforcement officers may continue questioning until such time that a suspect clearly requests an attorney. If the suspect invokes that right at any time, the police must immediately cease questioning him until an attorney is present. Edwards v. Arizona, 451 U.S. 477, 484-485 (1981). An objective inquiry is required under Edwards that requires that a suspect's statement can reasonably be construed to be an expression of a desire for an attorney's assistance. "When a suspect has expressed his desire to deal with the police only through counsel, he is not subject to further interrogation by the authorities until counsel has been made available to him,

unless the accused himself initiates further communication, exchanges, or conversations with the police. Edwards, 484-485.

Here, there was no ambiguity as to the Applicant's request for counsel. Indeed, the Applicant had invoked her Fifth Amendment right to have counsel present at questioning. Her statements can "reasonably be construed as an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." McNeil v. Wisconsin, 501 U.S. 171 (1991). Here, the Colorado Appellate Court unreasonably applied the law and concluded that the Applicant's statements "did not constitute a clear and unambiguous request for counsel." [Exhibit #1, page 2]. The Colorado Court relies on the fact that the investigator re-advised the Applicant of her rights. However, such a finding is inconsistent with Edwards which required that the wishes of the Applicant be followed.

Moreover, it was the investigator, not the Applicant, who re-initiated contact only *after* the Applicant requested counsel. The statements made by the Applicant can only be interpreted as an "expressed desire" to only deal with the police with counsel. Edwards. 485. The Applicant had the right to exercise her privilege against self-incrimination once she began making statements to the police. Additionally, the Applicant was completely overwhelmed and remained "unable to deal with the pressures of custodial interrogation without legal assistance." Arizona v. Roberson, 486 U.S. 675 (1988). The state court's decision was clearly an unreasonable application of federal law and the court's decision was based on an unreasonable determination of the facts in light of the evidence presented.

**2. The Applicant was denied her right to a fair trial and due process of law pursuant to the Fifth and Fourteenth Amendments due to the court allowing the improper introduction of hearsay testimony.**

The crux of the defense strategy was that the victim was the aggressor and that the Applicant killed her in self-defense. In an attempt to demonstrate that the victim feared the Applicant, the state prosecutor presented several key witnesses who testified that the victim "told them that the Defendant was angry with her, that she was afraid of the Applicant, and that the Applicant argued with her because of her relationship with a new boyfriend, Mr. Hill, and that she didn't want to stay in her apartment because she was afraid of the Applicant." [Applicant's direct appellate brief, page 13]. These witnesses and their subsequent statements were presented for one reason and that was to demonstrate that the Applicant was violent and had bad character traits. Presenting these witness, without recognizing its prejudicial impact on the Applicant, created an unfair trial for the Applicant.

Undoubtedly, the hearsay testimony presented may have been admitted to show the Applicant's motive, but it is clear that the witness testimony presented was done so in order to demonstrate some evil intent on the part of the Applicant. This type of presentation is inconsistent with Rule 404(b) of the Federal Rules of Evidence. In fact, there was simply no probative legitimate value in having these witnesses testify regarding statements made by the victim but to prejudice the jury. The statements made were presented for the truth of the facts asserted so as to leave the jury with one impression: the Applicant was the aggressor and that contrary to her defense strategy, there was no evidence of self-defense.

**-The state courts' decisions are contrary to and involve an unreasonable application of federal law or the decision reached was based on an unreasonable application of**

**clearly established law as determined by the Supreme Court.  Williams v. Taylor, 529 U.S. 362, 404-05 (2000).   In addition, the decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).**

The Confrontation Clause of the Sixth Amendment states that, "[i]n all criminal prosecutions, the accused shall enjoy the right…to be confronted with witnesses against him."  U.S. Const. amend. VI.  In Crawford v. Washington, 541 U.S. 36, (2004), the Supreme Court held that, under the Confrontation Clause, "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."  541 U.S. at 53-54.

The Crawford Court did not fully define the meaning of "testimonial," noting the existence of a number of formulations that "share a common nucleus."  Id. at 52.  It pointed out that "[m]ost of the hearsay exceptions cover statements that by their nature are not testimonial—for example, business records or statements in furtherance of a conspiracy."  Id. at 56.  In United States v. Summers, 414 F.3d 1287 (10th Cir. 2005), the Tenth Circuit held that "a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime.  Id. at 1302.

Here, the Applicant asserts that the statements made in this case fall within the definition of "testimonial hearsay" and that such witness testimony violates the confrontation clause.  At the time that the statements were made, it was reasonably foreseeable that the victim believed that her statements made to others, could potentially be used to demonstrate that the Applicant was harassing her and such comments could be

used in an investigation against the Applicant.  Although <u>Crawford</u> was decided after Applicant's direct appeal, its rational is controlling in this instance.

Even under an <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980) standard, the statements were clearly hearsay and may only be admitted when (1) the declarant is unavailable, and (2) the statements have indicia of reliability because they fall within a firmly rooted hearsay exception.  <u>Id</u>., at 65-66.  In this instance, the declarant was unavailable and the exception to the hearsay rule regarding the victim's "state of mind" is flawed.  The hearsay statements made by Katrina Mason, Ernestine Matthews and John Hill were not statements of the victim's existing mental state but were presented in a prejudicial manner as simple factual statements to create negative sentiment against the Applicant.  Such improper character evidence should have been disallowed under C.R.E. 404(b) since the statements implied a negative aspect of the Applicant's character in that she had the propensity to commit violence.

Equally important, is the notion that the witness statements were so prejudicial, as to invalid there introduction.  In evaluating such claims, federal courts look to the Supreme Court's four procedural safeguards as enunciated in <u>Huddleston v. United States</u>, 485 U.S. 681 (1988) that govern admission under rule 404(b) of the Federal Rules of Evidence.  The four requirements of <u>Huddleston</u> are as follows:

> (1) the evidence must be offered for a proper purpose;  (2) the evidence must be relevant; (3) the total court must take a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed.R.Evid. 105, the trial court shall, upon request instruct the jury that evidence of similar acts is to considered only for the proper purpose for which it was determined.

Here, the Colorado courts failed to consider the implications of C.R.E. 404(b) as well as the relevant Supreme Court cases. There is no discussion in the Colorado Court of Appeal's decision that Rule 404 was implicated or relevant to the prejudicial introduction of such statements, which only serves to buttress the state's case that the Applicant possessed bad character. [Exhibit #1, page 13]. Even the state court's cautionary instruction that the admission of the hearsay statements is acceptable under the state of mind exception, is invalid and contrary to both the Colorado and Federal Rules of Evidence.

The state court's decision regarding the improper introduction of hearsay testimony was unreasonable and contrary to current federal law. When examined in its totality, the hearsay testimony was overwhelmingly prejudicial and hurt the Applicant's self defense strategy. Given the multiple witness testimony, the hearsay statements cannot be deemed harmless or irrelevant.

**3.   The Applicant was denied her right to a fair trial pursuant to the Sixth Amendment as a result of the court denying the Applicant's right to full and effective cross-examination.**

As the evidence in this case indicates, the Applicant and the victim were lovers and the Applicant was attempting to break off her relationship with the victim on the date that the victim was killed. The Applicant testified that she was doing so due to the victim's drug use and her engaging in acts of prostitution. On the night of the shooting, the Applicant confronted the victim as to her "lifestyle" problems and then a fight occurred in which a gun was produced. The Applicant subsequently used to gun to shoot the victim only after she was attacked with a knife. At trial, the defense attempted to submit

testimony regarding the victim's prostitution activity as well as her use of illegal drugs. The trial court rejected the introduction of such testimony.

It was abundantly clear, that the introduction of evidence regarding the victim's lifestyle issues were relevant to the defense as they attempted to portray the shooting as self-defense and that it was the victim who engaged in risky behavior.  This type of evidence, introduced through witness testimony, was crucial and to deny such a defense violated the Applicant's Sixth Amendment rights.  Parenthetically, other witnesses could have addressed these facts that the victim engaged in a dangerous lifestyle and that the ensuing fight that occurred only reflected the victim's propensity for potential violence, as both prostitution and the use of illicit drugs have an element of potential violence in such activity.

**-The State Courts' decisions are contrary to and involve an unreasonable application of federal law or the decision reached was based on an unreasonable application of clearly established law as determined by the Supreme Court. <u>Williams v. Taylor,</u> 529 U.S. 362, 404-05 (2000).  In addition, the decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).**

The Colorado Court of Appeals only addressed this issue in the context as to whether the victim had previously been arrested before the homicide occurred.  [Exhibit #1, page 4].  This analysis misses a key point:  the introduction of such testimony and evidence was relevant in so far as to what the Applicant knew of and whether other witnesses could be called to testify (i.e., neighbors, friends of the victim, etc.) in order to address the character of the victim.  The arrest issue was irrelevant and a failure to permit such evidence from becoming part of the record was clearly contrary to existing federal law and the Sixth Amendment to the United States Constitution.

The Sixth Amendment guarantees the right of cross-examination in a criminal trial. Davis v. Alaska, 415 U.S. 308 (1974). This "right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." Washington v. State of Texas, 388 U.S. 14, 20 (1967). There is always a presumption in allowing for the full exploration of facts, which would tend to discredit a witness by showing a bias or prejudicial motive in his testimony. Alford v. United States, 282 U.S. 687 (1931). However, the Confrontation Clause guarantees only effective cross-examination, it does "not guarantee cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985). In guaranteeing effective cross-examination, district courts have "wide latitude…to impose reasonable limits…on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

The restrictions placed upon the Applicant were neither harmless nor constitutionally correct. See generally, United States v. Pedraz, 27 F.3d 1515 (10th Cir. 1994). The state appellate court's decision ignored the requirements of the Sixth Amendment and the relevant facts of this case. Instead, the court concerned itself with only the issue as to the victim's criminal past post homicide rather than the totality of facts as it related to the victim's dangerous lifestyle. The Applicant had a right to present relevant evidence that would address her self-defense argument. Under the Williams v. Taylor, 529 U.S. 362 (2000) holding, the Colorado Appellate Court applied an unreasonable application of federal law.

**4.   The Applicant was denied her right to a fair trial and due process of law pursuant to the Fifth and Fourteenth Amendments as a result of the improper conduct of the prosecution by asking a witness to testify about the Applicant's right to remain silent.**

The prosecutor improperly asked a witness to testify about the Applicant's right to remain silent.   Specifically, a police officer was called to testify regarding the arrest of the Applicant.   During re-direct, the prosecutor asked whether, "*in the midst of all this cooperation did Robin Farris say anything about being attacked?*"   (transcript Volume III, page 486).   Prior to this question being asked, defense counsel attempted to show that the defendant did not resist arrest and cooperated fully with the arresting officers. Applicant argued that this question was a violation of her right to remain silent thereby warranting a new trial.

The Colorado Court of Appeals found that such a question did not "constitute an impermissible comment on the defendant's silence."   [Exhibit #1, page 7].   The Court appreciating the significance of this error found nevertheless that the prosecutor's question did not result in an error as to the defendant's right to remain silent and that the question did not create an inference of guilt.   [Exhibit #1, page 7].   Ultimately, the Colorado Court found that although an error occurred, the error did not "undermine the fundamental fairness of defendant's trial so as to constitute plain error" as there was no objection initially made at the trial level.

**-The State Courts' decisions are contrary to and involve an unreasonable application of federal law or the decision reached was based on an unreasonable application of clearly established law as determined by the Supreme Court. Williams v. Taylor, 529 U.S. 362, 404-05 (2000).   In addition, the decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   28 U.S.C. § 2254(d).**

Here, the implication was that the Applicant, who had exercised her Fifth Amendment right, would somehow be penalized for not stating that she indeed had been attacked. In a federal trial, it is reversible error for the prosecutor to comment on a defendant's failure to testify on his own behalf. To permit such a comment, would "impose a penalty on the exercise of the constitutional privilege and the exercise thereof would be costly to the defendant." Griffin v. California, 380 U.S. 609 (1965). In this instance, the Applicant's right to remain silent and exercise her Fifth Amendment right was commented on by the arresting officer. Indeed, there should be no difference between a defendant's decision not to testify and the comments made regarding that decision when compared with a defendant's right to exercise her constitutional right to remain silent when asked a question by an arresting officer as in this case. The import of both factual scenarios are the same. Thus, the comments made by the prosecutor were reversible error under federal law.

In addition, the Colorado Court of Appeals held that the impermissible question occurred only once and thus should be negated by its full constitutional impact. Here, the constitutional infirmity was significant and cannot be deemed harmless. Chapman v. California, 383 U.S. 18 ( 1967). There can be no curative instruction once the prosecutor asked his question. The jury was left with one fact and that involved the inference of guilt due to the Applicant's silence.

The error was so fundamental and serious that the Colorado Court as well as this court should consider as reversible error, although a timely objection was not made at the trial court. Silber v. United States, 370 U.S. 717 (1962). The Colorado Court of Appeals arrived at a conclusion opposite to that reached by a federal court under federal law. See

generally, <u>Griffin v. California</u>, 380 U.S. 609 (1965). To allow this error to stand, would allow prosecutors to comment as to a defendant's right to remain silent during questioning by government agents. Thus, once the Colorado Court of Appeals admitted that the error occurred, there was no other option but to find that the Applicant's right to a fair trial was so undermined that a new trial should have been granted consistent with federal law. [Exhibit #1, page 7].

**5. The Applicant was denied her right to a fair trial and due process of law pursuant to the Fifth and Fourteenth Amendments due to the lack of sufficiency of evidence relating to the state offense of felony murder and burglary.**

The basis for the Applicant's conviction of felony murder rested solely on the jury finding her guilty of the underlying burglary conviction. The Applicant argues there was insufficient evidence to support a conviction for first and second burglary. In summary, counsel argued the following in his Rule 35(c) appeal:

> The Defendant's conviction for First and Second Degree Burglary (and thus the conviction for Felony Murder) cannot stand because the evidence is insufficient to establish that Ms. Farris had the requisite mental intent at the time she became a trespasser. <u>Cooper v. People</u>, 973 P.2d 1234 (Colo. 1999). That case upholds the principle that one cannot be guilty of burglary where the criminal intent is only formed after the person has become a trespasser. Although decided after Ms. Farris's case, that opinion is merely interpreting well-established principles and prior case law. Further, Ms. Farris is entitled to the benefit of that decision because her case is still pending post-conviction review.

> Although appellate counsel raised sufficiency of the evidence as to the burglary counts, he failed to raise the fact that the evidence was insufficient to establish that Ms. Farris had the requisite intent at the point that she was alleged to become a trespasser. Trial counsel also neglected to make such arguments.

Further, the jury instructions as to First and Second Degree Burglary were inadequate because they failed to set forth the requirement that the State had to establish that Ms. Farris had the requisite mental intent at the time she became a trespasser. Such defect was especially prejudicial in this case, because the facts of the case are that Ms. Farris and the deceased were in a romantic relationship and that Ms. Farris had previously been at the apartment. Thus, this is unlike the case of a defendant who had no legal reason to be in a dwelling and whose intent in entering or remaining would be clear. Had the jury been adequately instructed, a different result would have occurred.

The Court of Appeals incorrectly stated the facts of the case, and such error led to an erroneous conclusion. Specifically, the Court of Appeals was under the mistaken impression that Ms. Farris had only entered the deceased's apartment on one occasion, and the Court put great weight on the fact that Ms. Farris may have pushed her way in at first. However, the evidence at trial was undisputed that Ms. Farris left after the first entry and only returned later. Upon her return, there was no evidence of a forced entry, thus negating the elements of burglary, at least in part. Appellate counsel had a duty to address this error by the Court of Appeals and seek its correction via a Petition for Rehearing. [Applicant's Opening Brief before the Colorado Court of Appeals of her Rule 35(c) ruling, pages 8-10].

Contrary to the Court's findings, the underlying facts of this case do not support a finding that the Applicant committed burglary. Under Colorado law, a person who is invited onto another person's premises is not one who unlawfully remains or enters and in this instance the Applicant was a guest. [C.R.S. § 18-4-201(3)]. The Applicant may have only been a possible trespasser and that criminal offense is excluded as an element of both burglary and felony murder. [C.R.S. § 18-4-202, and § 18-3-102]. Here, the jury instructions provided were inadequate because they did not provide for the requirement that the prosecution had the burden of establishing the requisite mental state at the time of trespass. Parenthetically, both first and second degree burglary statutes required the

prosecution to prove that a defendant possessed intent to commit a crime at the time she enters a building.  Cooper v. People, 973 P.2d 1234 (Colo. 1999).

The jury instructions as to first and second degree burglary were clearly inadequate since the evidence at trial indicated that the Applicant lacked any intent to commit a burglary upon her return to the victim's apartment.  It is important to note, that both the Applicant and the victim were involved in a romantic relationship and that the Applicant had been at the victim's apartment on previous occasions.  Because of the established relationship, the Applicant would have had a factual reason for visiting the victim's home.  The facts required the jury to be adequately instructed as the evidence does not support a finding that a burglary was committed.

**-The State Courts' decisions are contrary to and involve an unreasonable application of federal law or the decision reached was based on an unreasonable application of clearly established law as determined by the Supreme Court. Williams v. Taylor, 529 U.S. 362, 404-05 (2000).  In addition, the decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).**

On appeal, the Colorado Court of Appeals addressed this issue and found that, "the evidence indicated that defendant brought a loaded gun to the victim's apartment, or at least knew that a gun was present at the apartment because she brought it during the earlier visit; defendant and the victim talked; the victim summoned a security guard to remove defendant and defendant refused to leave; defendant was calm; after the security guard left to call the police, defendant and the victim argued in the apartment and the hallway; defendant shot the victim two times in rapid succession, with one shot entering the back of the victim's shoulder; and defendant fled the scene and had KS hid her gun." [Exhibit #2, page 9].

In its opinion, the Court found that the "evidence viewed in the light most favorable to the prosecution, is sufficient to allow a reasonable person to conclude that defendant's intent to assault or menace the victim was formed at or before the time she unlawfully remained in the victim's apartment." [Exhibit #2, page 9]. This finding is not based on a reasonable determination of the facts given the previous relationship of the victim and the Applicant and the fact that there was no evidence to support a finding that the Applicant menaced the victim upon her return to the apartment. The Applicant, as an invited guest, returned to the victim's apartment to talk with her regarding her drug use and prostitution activities and its affect on their relationship. The evidence at trial indicated that the ensuing confrontation occurred only after the victim threatened the Applicant and then the Applicant acted in self-defense. Most importantly, the Court recognized the fact that the defendant remained calm during the time that the security guard asked her to be removed and after he contacted the police. Such actions are not representative of a person who has the intent to menace or commit an assault.

The U.S. Supreme Court In re Winship, 397 U.S. 358 (1970), held that a federal habeas corpus court must consider not whether there was any evidence to support a state court conviction, but whether there was sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt. In re Winship, at 358. In re Winship presupposes, as an essential of the due process guaranteed by the Fourteenth Amendment, that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof -- defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.

The progeny of cases following In re Winship including Jackson v. Virginia, 443 U.S. 307 (1979) require a court to take a critical inquiry on reviewing the sufficiency of the evidence to support a criminal conviction and to determine whether the evidence could reasonably support a finding of guilt beyond a reasonable doubt. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, is their any rational trier of fact that could have found the essential elements of the crime beyond a reasonable doubt.

Under 28 U.S.C. § 2254, an applicant is entitled to habeas corpus relief if it is found that, upon the evidence adduced at the trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); In re Winship, 397 U.S. 358 (1970). Currently, the Supreme Court has expanded is view and held that in any criminal prosecution, every essential element of the offense must be proved beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 477 (2000). Here, the import of Apprendi  and its earlier supporting cases serve to support Applicant's claim that the evidence presented at trial did not support a finding of burglary as an essential element of felony murder. Without sufficient evidence to support a burglary charge, the Applicant could not be guilty of felony murder and thus her conviction must be vacated.

As the facts do not support a finding that the Applicant had the requisite intent to commit a burglary and the state court's decision remains contrary to the rudimentary elements of the Supreme Court's holdings in In re Winship, Jackson v. Virginia, and now Apprendi v. New Jersey, the Applicant's conviction cannot stand. The Colorado Court of Appeals failed to find that the jury instructions were inconsistent with the facts. The state

had to establish that the Applicant had the requisite intent to commit a burglary,  The evidence does not support the findings and the decision is an unreasonable determination of the facts as presented.  28 U.S.C. § 2254(d).

**6.  The Applicant was denied her right to a fair trial and due process of law pursuant to the Fifth, Sixth and Fourteenth Amendments due to the state court's failure to provide for an evidentiary hearing during Applicant's Rule 35(c) proceedings based on claims of ineffective assistance of counsel, sufficiency of evidence, introduction of hearsay statements, right of the Applicant to remain silent, as well as cumulative errors.**

During the ten years that the Applicant's multiple Rule 35(c) motions were pending, the state district court never granted an evidentiary hearing on any of her issues which included claims of ineffective assistance of counsel, sufficiency of evidence, the improper introduction of hearsay statements as well as her right to remain silent.  In each instance, the Applicant established the need for an evidentiary hearing, especially regarding her claims of ineffective assistance of counsel.  In Colorado, a hearing on a post conviction motion is required unless the motion, files and the record clearly establish the allegation presented in the motion are without merit and do not warrant relief.  People v. Trujillo, 549 P.2d 1312 (Colo. 1976).  A defendant need only assert facts that if true would provide a basis for relief under Crim.P.35.  White v. District Court, 766 P.2d 632 (Colo. 1988).  "If a criminal defendant has alleged acts or omissions by counsel that, if true, could undermine confidence in the defendant's conviction or sentence, and the motion, files, and record in the case do not establish that those acts or omissions were reasonable strategic choices or otherwise within the range of reasonably effective assistance, the defendant must be given an opportunity to prove they were not."  Ardolino v. People, 69 P.3d 73, 77 (Colo. 2003).

Here, the Applicant has asserted that her former appellate counsel was ineffective for failing to raise the fact that the evidence was insufficient to establish that the Applicant had the requisite intent to have committed a burglary.   In addition, counsel failed to adequately address the jury instructions as to first and second degree burglary on appeal and such issues could have been addressed by filing a Petition for Rehearing or a Writ of Certiorari with the Colorado Court of Appeals.   Neither legal avenue was pursued.

Moreover, appellate counsel was ineffective in failing to raise the confrontation issue on direct appeal as the trial court permitted the improper admission of hearsay statements made by Katrina Mason, Ernestine Matthews and John Hill.   All of these witnesses discussed testified as to negative comments that the victim made against the Applicant. For example, Ms. Matthews was permitted to testify that the victim had told her that the victim had jumped out of a car after an argument with the Applicant.   Mr. Hill was allowed to testify regarding arguments that the victim had with the Applicant.    Such statements were in violation of Colorado Rules of Evidence 404(b) and by allowing the statements to be introduced, the Applicant was denied her right to confrontation under the Sixth Amendment to the United States Constitution.

Appellate counsel should have also raised on appeal that the confrontation clause was violated, that the statements made by the specific witnesses above were improper and that any curative instruction was inappropriate.   The limiting instruction that was provided said in part that, "you may consider it only for a limited purpose and that limited purpose is to establish the declarant's, that is, existing state of mind and emotion at the time she made those statements, not for the truth of the statements, but her existing state of mind and emotion at the time she made the statement.   Those things are things you can then use

38

to draw inferences, as you deem appropriate, when you are considering the events that happened the early morning hours of the 20th."  [Transcript of trial, page 239].  Clearly, such an instructions was ineffective and failed to address the prejudicial impact upon the Applicant and her defense strategy of self-defense.  Appellate counsel's conduct was substandard in not raising these issues on appeal.  See Strickland v. Washington, 466 U.S. 668, 667-688 (1984), second prong.

Finally, an evidentiary hearing was required to address appellate counsel's failure to include on appeal the inadequate Curtis advisement that occurred.  Under People v. Curtis, 681 P.2d 504 (Colo. 1984), a defendant has the right to testify in her own defense or remain silent and that right has its source in the Due process Clause of the United States and Colorado Constitution.  A defendant must make a voluntary, knowing and intentional decision regarding her right to testify or remain silent.  Additionally, a defendant should be advised that she has the right to not testify if she does not then the jury can be instructed about that right.  Curtis, at 514.  Curtis requires a mandatory advisement and a failure to properly advise a defendant mandates reversal of a defendant's conviction.  People v. Milton, 864 P.2d 1097 (1993).

Here, the Applicant after receiving a Curtis type advisement, stated that "I'm going to go ahead and testify, and I don't want to, but it looks like I really don't have much choice, so I am going to testify."  No further inquiry was made by the trial court regarding the unclear comments made by the Applicant.  Under the requirements of Curtis, a court must insure that a defendant truly understands the nature of her waiver to remain silent and no such follow-up occurred in this case.

All of these ineffective assistance of counsel examples as presented to the Colorado Court of Appeals as well as to the Colorado Supreme Court required a remand to the trial court to insure that an hearing would be provided to afford Applicant the opportunity to substantiate her claims.  The Colorado courts improperly denied this request.

**-The State Courts' decisions are contrary to and involve an unreasonable application of federal law or the decision reached was based on an unreasonable application of clearly established law as determined by the Supreme Court. Williams v. Taylor, 529 U.S. 362, 404-05 (2000).  In addition, the decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).**

The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right…to have the assistance of counsel for his defense."  This agreement between the government and its citizens has evolved into an understanding that counsel must be more than a helping hand.  The right to counsel is a fundamental right, as it assures the fairness and thus the legitimacy of our adversary process.  Gideon v. Wainwright, 372 U.S. 335 (1963).  A citizen accused of a crime is entitled to be assisted by an attorney who plays a role necessary to ensure that the trial is fair.  In essence, the right to counsel is the right to effective assistance of counsel.  Evitts v. Lucey, 469 U.S. 387 (1985).  The right to counsel requires counsel rendering, or likely to render, effective assistance, even if privately retained.  Cuyler v. Sullivan, 446 U.S. 335 (1980).

In evaluating claims of ineffective assistance of counsel of trial counsel, Courts have utilized standards of conduct enunciated in Strickland v. Washington, 466 U.S. 668, 667-688 (1984).  In order to obtain relief from a conviction on this specific ground, a defendant must meet a two-prong test as outlined in the Strickland case.  First, a defendant must show that his trial counsel's performance was deficient in that it fell

below an objective standard of reasonableness.  Second, a defendant must demonstrate

that this deficiency prejudiced the defense in that there is a reasonable probability that but

for counsel's deficient performance, the results or outcome of the trial would have been

different.  Id.  The reasonable probability standard is a probability sufficient to undermine

confidence in the outcome of the trial.  Id.

    The proper standard for attorney performance is that of reasonably effective

assistance.  The Supreme Court stated that:

> Judicial scrutiny of counsel's performance must be highly
> deferential.  It is all too tempting for a defendant to second-
> guess counsel's assistance after conviction…and it is all too
> easy for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act or
> omission of counsel was unreasonable.  Id. at 669.

The Court must rather look to the particular facts of the case and determine whether the

acts or omissions were outside the wide range of professionally competent assistance to

the extent that the errors cause the "adversarial testing process" not to work.  Elledge v.

Dugger, 823 F.2d 1439, 1444 (11th Cir. 1987).

    In addition, claims of ineffective assistance of counsel cannot be briefed prior to

taking evidence.   In this instance, Applicant has proffered examples of counsel's

ineffective assistance of counsel, all of which were presented to the Colorado courts.

Here, appellate counsel was ineffective in failing to address on direct appeal the

sufficiency of the evidence, the improper introduction of hearsay statements, and the

Applicant's right to remain silent rather than testifying at trial.  Only in the context of an

evidentiary hearing at the trial court, as requested by the Applicant, could the Applicant

support her arguments.  Nevertheless, a claim of ineffective assistance of counsel will fail

unless a defendant affirmatively demonstrates both attorney error and resulting prejudice

by alleging facts to identify precisely how his attorney failed to fulfill his obligations. See generally, <u>Spillers v. Lockhard</u>, 802 F.2d 1007 (8th Cir. 1986), citing, <u>Machibroda v. United States</u>, 368 U.S. 487, 495 (1962).

Here, the Colorado Court of Appeals held that "if a trial court concludes that the allegations in a defendant's Crim. P. 35(c) motion, if proved true, are insufficient to satisfy either prong of the <u>Strickland</u> test, the court may properly deny that motion without a hearing." [Exhibit #2, page 5]. Thus, the Colorado Court determined that the issue of the sufficiency of evidence, the improper introduction of hearsay testimony, and the <u>Curtis</u> advisement were properly excluded from the Applicant's appeal. This finding is in contradiction to the facts and federal law applied to this case as outlined in the issues above. In each claim, the Applicant has demonstrated that her appellate attorney's representation was substandard and that but for his failures, the results of the case may have been different. Without an evidentiary hearing, Applicant was unable to substantiate her claims. The state courts refusal to provide for such a hearing is a per se substantive and procedural due process violation of the Fifth and Fourteenth Amendments. <u>Rock v. Arkansas</u>, 483 U.S. 44 (1987).

The claims presented to the Colorado Courts were supported by factual allegations thereby justifying a hearing especially as to the improper <u>Curtis</u> advisement and counsel's substandard performance on direct appeal. The Colorado Courts failed to properly apply the omissions of counsel's conduct in accordance with the requirements of <u>Strickland</u>. Thus, the Colorado Court's decisions, denying the Applicant a hearing, were based on an unreasonable determination of the facts thereby requiring habeas review in accordance with 28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

## IX.  REQUEST FOR AN EVIDENTIARY HEARING

The Applicant requests the opportunity to demonstrate her claims in an evidentiary hearing.  She has proffered in her petition that she would establish at a hearing the existence of the omissions by defense counsel which were below the standard of professional competence for lawyers practicing in state courts.  She asked to demonstrate through witnesses, including subpoenaing witness that these omissions were neither strategic nor planned, but was the result of neglect and mistake.  She is entitled to an evidentiary hearing if the facts she alleged, if proven true, would entitle her to relief. Futuch v. Dugger, 874 F.2d 1484 (11th Cir. 1989).

Similar to a Section 2254 proceeding, 28 U.S.C. Section 2255 reads, in pertinent part, as follows:  "Unless the motion and the files and records of the case *conclusively show that the prisoner is entitled to no relief*, the court shall cause notice thereof to be served on the United States attorney, grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto (emphasis added)." Thus, in this instance, a hearing is necessary to afford this Applicant the opportunity to substantiate her claims.  Applicant should have the ability to rebut the state court findings.  Houchin v. Zavaras, 107 F.3d 1465 (10th Cir. 1997).

Furthermore, an evidentiary hearing is required when a Writ of Habeas Corpus Petition alleges facts, based on occurrences outside the record involving claims of ineffective assistance of counsel.  Mayes v. Gibson, 210 F.3d 1284 (10th Cir. 2000).  The Applicant maintains that she has established the need for such a hearing given the allegations of ineffective assistance of counsel.  A failure to provide for such an evidentiary hearing is a violation of the due process clause of the Fourteenth Amendment.

This Court must grant the Applicant an evidentiary hearing since these incidents (ineffective assistance of counsel claims and right of the Applicant to remain silent) are based on facts outside of the record. A defendant seeking Section 2255 or 2254 relief is entitled to an evidentiary hearing if she alleges facts, which if true, would warrant habeas relief. Tejada v. Dugger, 941 F.2d 1551 (11th Cir. 1991). The issues raised in Ms. Farris's initial motion to the state district court indicate by a standard greater than a preponderance of the evidence that his case is complete with serious Constitutional violations. See generally, United States v. Bondurant, 689 F.2d 1246 (5th Cir. 1982). The critical issue is whether the Applicant might have prevailed if given the chance to prove these allegations. Machibroda v. United States, 368 U.S. 487 (1962). In this instance, the Applicant asserts that the Court's failure to grant her a hearing to substantiate her claims will be in essence a denial of her due process rights pursuant to the Fourteenth Amendment of the United States Constitution.

## X. CONCLUSION

The Applicant requests that this Court vacate her conviction/sentence or grant such other relief as the Applicant may be entitled to receive. Moreover, as necessary, the Applicant requests the opportunity to amend this petition and memorandum.

Respectfully submitted,

s/Robert G. Levitt
Robert G. Levitt, Esq.
Counsel for Applicant
600 17th Street
Suite 2800 South
Denver, Colorado 80202
(303) 377-9000
Email: rglevitt@aol.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 12th, 2008, a true and correct copy of the foregoing **APPLICANT'S WRIT OF HABEAS CORPUS PETITION AND MEMORANDUM OF LAW PURSUANT TO 28 U.S.C. SECTION 2254** was deposited in the U.S. Mail, postage prepaid, and sent to the following:

Paul Koehler, Esq.
Assistant Attorney General
Office of the Attorney General
1525 Sherman Street, 5th Floor
Denver, Colorado 80203

Warden Mark A. Broaddus
Denver Women's Correctional Facility
3600 Havana
Denver, Colorado 80239

s/ Robert G. Levitt
Robert G. Levitt, Esq.