**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 08-cv-00986-CMA

ROBIN FARRIS,

    Petitioner,

v.

MARK A. BROADDUS, Warden, and
JOHN W. SUTHERS, Attorney General of the State of Colorado,

    Respondents.

---

**ORDER ON PETITION FOR HABEAS CORPUS**

---

This matter is before the Court on Applicant's Writ of Habeas Corpus Petition and Memorandum of Law Pursuant to 28 U.S.C. Section 2254 ("Petition") (Doc. # 1) filed by Petitioner Robin Farris. Respondents answered the Petition (Doc. # 31), and Petitioner filed a Traverse (Doc. # 35). After reviewing the pertinent portions of the record in this case including the Petition, the Answer, the Traverse, and the state court record, the Court concludes that the Petition should be denied.

## I.  BACKGROUND

Following a jury trial in case number 90CR222 in the Arapahoe County District Court ("the trial court"), Petitioner was convicted of first degree felony murder, second degree murder, first degree burglary, and second degree burglary. The following factual

summary is taken from the opinion of the Colorado Court of Appeals ("CCA") on direct appeal from the judgment of conviction:

> On the evening of February 19, 1990, an argument developed between defendant and the victim, her former lover, at the victim's apartment. A neighbor saw defendant push the door of the apartment open and enter.
>
> Later, the victim called a security guard at her apartment complex and asked that defendant be removed. The guard requested her to do so, and then went to his office to call the police. The argument erupted again, and defendant shot the victim, fatally wounding her.
>
> Defendant admitted that she had shot the victim with a gun she had brought to the victim's apartment, but contended that she had acted in self defense.

*People v. Farris*, No. 91CA0396 (Colo. App. Nov. 27, 1992) (unpublished decision) (Doc. # 10-4 at 2).

The trial court found that the three lesser counts merged into the conviction for first degree felony murder and Petitioner was sentenced to life in prison on that count. The judgment of conviction was affirmed on direct appeal. (*See id.*)

On November 8, 1995, Petitioner filed a *pro se* postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure. On June 12, 1996, Petitioner filed a second *pro se* Rule 35(c) motion. The two *pro se* Rule 35(c) motions remained pending for a number of years. On November 24, 2004, counsel for Petitioner filed a third Rule 35(c) motion that incorporated both prior *pro se* motions and also raised new claims. On February 16, 2005, the trial court entered an order denying relief under Rule 35(c) and the trial court's order was affirmed on appeal. *See People v. Farris*,

No. 05CA0660 (Colo. App. Feb. 1, 2007) (unpublished decision) (Doc. # 10-9). On May 14, 2007, the Colorado Supreme Court denied Petitioner's petition for writ of certiorari in the postconviction proceedings. (Doc. # 10-10.)

## II. FEDERAL COURT PROCEEDINGS

Petitioner asserts six claims for relief in the Petition. During the initial review of this action, Senior Judge Zita Leeson Weinshienk entered an order (Doc. # 13) finding that claims one and four in the Petition are exhausted. Senior Judge Weinshienk determined that claims two, three, and five are not exhausted and those claims were dismissed. Senior Judge Weinshienk also dismissed claim six because that claim did not raise a cognizable federal constitutional issue. Therefore, only claims one and four remain to be considered. Petitioner asserts in claim one that the trial court violated her right to a fair trial and due process of law by denying her motion to suppress a statement she made to the police after she was arrested. Petitioner asserts in claim four that her right to a fair trial and due process of law was violated when the prosecution improperly asked a witness to testify about Petitioner's right to remain silent.

## III. LEGAL STANDARDS

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time her conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to

or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."  *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"  *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id*. at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."  *Id*. at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."

*Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id*.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to that court. Pursuant to § 2254(e)(1), the Court must presume that state court factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id*.

If a claim has not been adjudicated on the merits in state court, and also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## IV.  DISCUSSION

### A.  CLAIM ONE

Petitioner first claims that her right to a fair trial and due process of law was violated when the trial court denied her motion to suppress a statement she made to the police after she was arrested.  Petitioner alleges that, while she was being advised of her rights prior to being questioned at the police station, she asked the detective when she would be provided with a lawyer and when she would get to see a judge. The detective stated that he was unsure when Petitioner would get a lawyer and advised her that she could wait until after that time before talking to him.  Petitioner subsequently signed a written waiver of her rights and provided a complete statement of her involvement in the shooting.  Petitioner's motion to suppress her statement was denied and the substance of the statement was introduced into evidence at trial.

Pursuant to the Fifth Amendment to the United States Constitution, a criminal suspect has the right not to be questioned while in custody without the assistance of a lawyer.  *Miranda v. Arizona*, 384 U.S. 436, 467-72 (1966).  If an individual expresses a desire to deal with the police only through counsel, the police may not subject the individual to further interrogation until counsel has been made available to her, unless

the individual validly waives her right to counsel by initiating further communication with the police.  *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).  In order to apply this rule, the Court must conduct two inquiries.  *See Smith v. Illinois*, 469 U.S. 91, 95 (1984).  First, the Court must determine whether Petitioner "actually invoked [her] right to counsel."  *Id*; *see also Edwards*, 451 U.S. at 485 (stating that "it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel").  Second, if Petitioner did invoke her right to counsel clearly and unambiguously, her statement in response to further questioning was admissible only if she "(a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right [s]he had invoked."  *Id*.

Petitioner argues that she invoked her right to counsel in a clear and unambiguous manner.  Petitioner further argues that, because her request for counsel was clear and unambiguous and she did not initiate further communication after making a clear and unambiguous request for counsel, introduction of her statement at trial violated her rights under the Fifth Amendment.

Respondents disagree and argue that the CCA's ruling is neither contrary to nor an unreasonable application of federal constitutional law as determined by the Supreme Court in *Davis v. United States*, 512 U.S. 452 (1994).  Respondents' reliance on *Davis* is problematic because *Davis* was decided in 1994, after Petitioner's conviction became final.  Therefore, *Davis* cannot be the clearly established federal law to be applied under § 2254(d)(1).  *See Williams*, 529 U.S. at 412 (stating that clearly established federal law

under § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision"). However, *Davis* does confirm the clearly established federal law that existed at the time Petitioner was convicted: "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis*, 512 U.S. at 459 (citing *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991), and *Edwards*, 451 U.S. at 485).

The CCA applied this clearly established federal law and rejected Petitioner's claim that her constitutional rights were violated by the failure to suppress her statement because her request for counsel was ambiguous.

> If, after being advised of his or her rights, a suspect requests an attorney, all questioning must cease. Edwards v. Arizona, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed.2d 378 (1981). Likewise, if the suspect makes an ambiguous statement respecting her right to an attorney, all questioning must cease, except for limited questioning intended to clarify the statement. If the statement is clarified, and it is determined that the statement is not a request for an attorney, any subsequent statements made are admissible. People v. Benjamin, 732 P.2d 1167 (Colo. 1987).
>
> Here, the investigator read defendant her rights and gave a written copy of that advisement to her to read. At that point, defendant signed a statement that she had read her rights and that they had been read to her. Defendant then asked the officer a series of questions about the procedures to be followed in the interrogation; one of the questions was, "When will I go before a judge and when will I get a lawyer?"

> Considered in context, we conclude that this question did not constitute a clear and unambiguous request for counsel. See People v. Hulsing, 825 P.2d 1027 (Colo. App. 1991) (statement that defendant "really needed" and "had better talk" to a lawyer not an unambiguous request).
>
> However, given its ambiguous nature, the investigator was required to clarify that statement so as to ensure that defendant was not seeking to have an attorney present during questioning. And, one way in which such a clarification may be sought is to re-advise the suspect of his or her rights, including the right to counsel. People v. Hulsing, supra.
>
> Here, the detective responded that he did not know when defendant would get an attorney. He also emphasized, however, that, if she wished, she could decline to answer any questions until she had an attorney. The detective then asked defendant if she was willing to waive her rights and to answer some of his questions. Defendant signed a written waiver of her rights and answered the questions posed to her.
>
> We conclude that the investigator's actions complied with the requirements laid down in People v. Benjamin, supra. The investigator explained the critical protection about which defendant was asking, i.e., that defendant could elect to remain silent until she had spoken with an attorney and then have an attorney present during questioning. Defendant was also told that she could stop at any time during the interrogation and could refuse to answer any further questions. It was only after these explanations were given that defendant voluntarily signed the waiver of rights form and discussed the facts leading up to the murder.
>
> The trial court's determination that the investigator's actions were sufficient to clarify the ambiguity in defendant's question and to conclude that she was willing to discuss the allegations without the presence of an attorney. Hence, the court did not err in admitting defendant's later statements.

(Doc. # 10-4 at 2-4.)

Whether the particular words used by Petitioner constituted an unambiguous and unequivocal request for counsel is a question of law reviewed under 28 U.S.C. § 2254(d)(1).  *See Valdez v. Ward*, 219 F.3d 1222, 1232 (10th Cir. 2000).  Petitioner does not argue that the CCA applied a rule that contradicts clearly established federal law or arrived at a different result from a Supreme Court decision despite materially indistinguishable facts.  In any event, the Court finds that the CCA's decision is not contrary to clearly established federal law.  *See House*, 527 F.3d at 1018.

The CCA's conclusion that Petitioner's reference to counsel was ambiguous also is not an objectively unreasonable application of clearly established federal law.  As the Supreme Court has observed, "a statement either is [an unambiguous] assertion of the right to counsel or it is not."  *Smith*, 469 U.S. at 97-98.  The appropriate standard for determining whether a suspect's reference to an attorney is ambiguous or equivocal, as articulated in *Davis* and based on Supreme Court law that was clearly established when Petitioner was convicted, is if "a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel."  *Davis*, 512 U.S. at 459.  Under this standard, Petitioner's question regarding when she would get a lawyer was not a clear and unambiguous invocation of her right to counsel.  *See Davis*, 512 U.S. at 455 (suspect's statement that "Maybe I should talk to a lawyer" made about an hour and a half into an interview was ambiguous); *LaFevers v. Gibson*, 182 F.3d 705, 712-13 (10th Cir. 1999) (suspect's statements that "I just need to talk to [a lawyer]" and "when can you get me a lawyer" were ambiguous).  The fact that the

detective proceeded to clarify whether Petitioner was invoking her right to counsel, a procedure subsequently approved by the Supreme Court in *Davis*, is not relevant to the issue of whether Petitioner's initial question about when she would get an attorney was a clear and unambiguous invocation of her right to counsel. Furthermore, contrary to Petitioner's assertion, the CCA did not rely on the fact that Petitioner signed a written waiver and answered the questions asked of her in determining that her initial question regarding when she would get a lawyer was ambiguous. The CCA considered those facts in the context of the detective's efforts to clarify whether Petitioner was invoking her right to counsel based on her ambiguous statement. However, consideration of those facts in that context was necessary only because the CCA already had determined that Petitioner's reference to counsel was ambiguous.

       The Court need not consider whether Petitioner initiated further discussions with the detective or whether she knowingly and intelligently waived her right to counsel after invoking it because Petitioner did not clearly and unambiguously assert her right to counsel. As a result, the Court finds that Petitioner's first claim for relief lacks merit and must be dismissed.

       B.  Claim Four

       Petitioner asserts in claim four that her right to a fair trial and due process of law was violated when the prosecution improperly asked a witness to testify about Petitioner's right to remain silent. Petitioner specifically challenges a question posed to Officer Konkoly, a crime scene investigator who participated in collecting evidence from

Petitioner at the police station following her arrest.  On cross-examination, the defense established that Petitioner was cooperative while Officer Konkoly collected the evidence.  On redirect examination, the prosecution asked the following question that forms the basis for Petitioner's fourth claim:

> Q.   Investigator Konkoly, in the midst of all this cooperation, did [Petitioner] say anything about being attacked?
>
> A.   No, sir she didn't.

(Trial Tr. p.486.)  Defense counsel then established on recross-examination that Officer Konkoly had not asked Petitioner if she had been attacked or any other questions.

Petitioner argues that her rights were violated because Officer Konkoly improperly was asked to testify about her right to remain silent.  Petitioner specifically points to *Griffin v. California*, 380 U.S. 609 (1965), as the source of the clearly established federal law that supports her claim.  In *Griffin*, the Supreme Court held that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."  *Id.* at 615.

The CCA rejected Petitioner's claim that her rights were violated based on the prosecution's question to Officer Konkoly about whether Petitioner had mentioned being attacked.

> Under some circumstances, a question of this type may infringe upon a defendant's right against self-incrimination.  See People v. Ortega, 198 Colo. 179, 597 P.2d 1034 (1979).  The relevant inquiry, however, is whether the prosecutor used the defendant's silence as a means of

> creating an inference of guilt. People v. Atencio, 193 Colo. 184, 565 P.2d 921 (1977).
>
> Here, any inference created in the jury's mind was negligible. The prosecutor asked the question only once, on cross-examination [sic], and did not repeat or emphasize the question. Further, upon redirect examination [sic], it was established that the investigator had never asked the defendant whether she had been attacked. This uncontested testimony negated any inference that, by her silence, defendant had suspiciously omitted her contention that she had acted in self-defense. Therefore, such error as may have occurred did not undermine the fundamental fairness of defendant's trial so as to constitute plain error.

(Doc. # 10-4 at 8.) As is apparent, the CCA applied a plain error standard of review in considering this claim. "Under this standard, reversal is appropriate only if, after reviewing the entire record, we can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." (*Id.* at p.7.)

Even assuming, as the CCA apparently did, that a constitutional error occurred when the prosecution asked Officer Konkoly if Petitioner had said anything about being attacked, the Court finds that the error was harmless. "[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard" in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Fry v. Pliler*, 551 U.S. 112, 121 (2007). Pursuant to *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. If the evidence is balanced so evenly that the Court is in grave doubt about whether the error meets this

standard, the Court must hold that the error is not harmless. *O'Neal v. McAninch*, 513 U.S. 432, 436-37 (1995). The Court makes this harmless error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

Based upon the Court's review of the entire state court record, the Court finds that any error with respect to the prosecution asking Officer Konkoly whether Petitioner had said anything about being attacked was harmless for the following reasons. First, the Court agrees with the CCA that the question was asked only once and neither the question nor Petitioner's silence was emphasized by the prosecution. Although the question at issue was the only question asked by the prosecution on redirect examination of Officer Konkoly, the defense quickly limited any adverse inference by establishing on recross-examination that Officer Konkoly had not asked Petitioner whether she had been attacked or any other questions.

Second, Petitioner's statement to the police, the substance of which was introduced at trial through the testimony of the detective who interviewed Petitioner, included her contention that she had been attacked and had acted in self-defense when she shot the victim. That interview, and Petitioner's statement to the detective, occurred within one or two hours after Petitioner's encounter with Officer Konkoly. As a result, the Court finds that any negative inference that might arise from Petitioner's failure to volunteer information in the absence of any questioning by Officer Konkoly was further negated by the fact that she provided that specific information when she

was interviewed an hour or two later.  Therefore, the Court concludes that any constitutional error that may have occurred when Officer Konkoly was asked to comment on Petitioner's right to remain silent did not have a substantial and injurious effect on the jury's verdict.  As a result, Petitioner's fourth claim also lacks merit and will be dismissed.  Accordingly, it is ORDERED:

1. That Applicant's Writ of Habeas Corpus Petition and Memorandum of Law Pursuant to 28 U.S.C. Section 2254 ("Petition") (Doc. #1) is DENIED;

2. That this case is DISMISSED WITH PREJUDICE; and

3. There is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED at Denver, Colorado, this __16th__ day of December, 2010.

BY THE COURT:

*[signature: Christine M. Arguello]*

CHRISTINE M. ARGUELLO
United States District Judge